JUDGE BATTS

10 CV 4189

DOC # 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

WILLIE A. HARTWELL JR.,

Plaintiff,

-against-

GUARDIAN SERVICE INDUSTRIES, INC., GUARDIAN SECURITY SERVICES, INC., and LOCAL 32BJ-SERVICE EMPLOYEES INTERNATIONAL UNION,

Defendants.

-----------------------------------------------------------X

Case No.

**COMPLAINT**

JURY TRIAL DEMANDED
ECF CASE

Plaintiff WILLIE HARTWELL JR., ("Hartwell"), by his attorneys Mintz & Gold LLP, as and for his Complaint against defendants Local 32BJ-Services Employees International Union ("32BJ"), Guardian Security Services, Inc. ("Guardian Security") and Guardian Service Industries Inc. ("Guardian Service Industries"), asserts as follows:

**PRELIMINARY STATEMENT**

1. This is a hybrid action for the breach and/or violation of a collective bargaining agreement by Plaintiff's employer, Defendant Guardian Security and its alter ego Guardian Service Industries, and an action for breach of the duty of fair representation by Plaintiff's Union, Defendant 32BJ, instituted pursuant to Section 301 of the Labor Management Relations Act. 29 U.S.C. 151 et seq. (hereinafter the "Act").

2. Plaintiff learned for the first time in January 2010 that 32BJ had willfully engaged in a breach of the duty of fair representation by failing to allow Plaintiff to pursue to arbitration his meritorious grievance against his employer for its failure to pay him pursuant to the Collective Bargaining Agreement ("CBA") between his employer and 32BJ. Simultaneously,

Guardian Security and Guardian Service Industries have breached their contract with 32BJ by failing to pay Plaintiff the proper wage rate required by the CBA.

**JURISDICTION AND VENUE**

3. Jurisdiction of this Court is founded on the above statute and 28 U.S.C. §§1331 and 1337.

4. Venue is founded upon the action arising in and the residence of the Defendants in the Southern District of New York.

**PARTIES**

5. Plaintiff Willie A. Hartwell Jr. is a citizen of the United States and an individual residing in Queens, New York.

6. At all times herein mentioned, upon information and belief, 32BJ is a non-incorporated association and labor organization as defined by section 152 of the Act (29 U.S.C. §152).

7. 32BJ's principal place of business is located at 101 Avenue of the Americas, New York, NY 10013.

8. 32BJ is a representative and labor organization within the meaning of section 152 of the Act (29 USC 152)

9. 32BJ admits to membership, among others, security guards.

10. 32BJ is the bargaining representative of Guardian Security's building service employees.

11. 32BJ is the bargaining representative of Guardian Service Industries' building service employees.

12. At all times herein mentioned, defendant Guardian Service Industries was, and still remains, a domestic corporation, duly organized and existing by virtue of the laws of the state of New York.

13. At all times herein mentioned, defendant Guardian Security was, and still remains, a domestic corporation, duly organized and existing by virtue of the laws of the state of New York.

14. Both Guardian Security and Guardian Service Industries have listed in their filings with the New York Secretary of State that they are located at the same address (161 Sixth Avenue, 4th Floor, NY, NY) and have the same Chairman/CEO (Samuel Herzfeld). Moreover, both companies were incorporated by the law firm of Goetz Fitzpatrick & Bruckman.

15. Upon information, Guardian Security and Guardian Service Industries are alter-egos of each other. Alternatively, they are a single employer of plaintiff.

16. At all times herein mentioned, upon information and belief, Guardian Service Industries is in the business of providing complete facility operations and maintenance services for commercial properties in the Northeast region of the United States.

17. At all times herein mentioned, upon information and belief, Guardian Security is in the business of, *inter alia*, providing security for commercial and residential buildings in the United States.

18. Both defendant Guardian Service Industries and defendant Guardian Security are "employers" within the meaning of Section 152 of the Act.

## BACKGROUND

19. Guardian Service Industries and 32BJ are/were parties to two collective bargaining agreements ("CBA") which are relevant herein. The first CBA applicable to Plaintiff and other employees was effective from October 1, 2004 through December 31, 2007 (hereinafter "the 2005 CBA"). The current CBA applicable to Plaintiff is effective from January 1, 2008 through December 31, 2011 (hereinafter "the 2008 CBA").

20. On July 21, 2007, Hartwell became employed by Guardian Security.

21. On July 21, 2007, Hartwell began working at the building located at 100-104 5th Avenue (the "Building") as a security guard on the overnight weekend shift earning $9.50 an hour.

22. Upon information and belief, Guardian Service Industries was contracted by the owners of the Building to provide the Building with 24 hour security.

23. Hartwell has worked at the Building as a Security Guard from July 21, 2007 through the present time.

24. On or about October 22, 2007, Hartwell, after a three (3) month probationary period provided for in the CBA, began paying Union dues to 32BJ and has timely paid his dues through the present time.

25. At all times thereafter herein, Hartwell has been and remains a member in good standing of 32BJ.

26. 32BJ is the bargaining agent for Hartwell for contract negotiations and grievance resolutions with Guardian Service Industries.

27. At no time prior to May 2010, during a period when Hartwell paid his Union dues for two-and-one-half (2 ½) years, did 32BJ inform Hartwell that the Building which he worked at was not covered by the CBA.

28. Article XIX, §11B of the 2005 CBA and pages 112-115 of the 2008 CBA, provide that the employer was contractually obligated to provide the employees with annual hourly wage increases.

29. Article XIX §9 of the 2005 CBA and Article XIX §7 of the 2008 CBA provide that part-time employees shall be paid at the same hourly rate as full-time employees in the same occupational class.

30. Hartwell never received any of the wage increases set forth in either the 2005 or the 2008 CBA.

31. Specifically, Article XIV §12(b) of the 2005 CBA and Article XIX §10(b) of the 2008 CBA provide that for a thirty (30) month new hire period, a new hire employed in the guard category shall be paid a starting rate of eighty percent (80%) of the minimum regular hourly wage rate and shall be provided annual increases of 80% of the annual hourly wage increases set forth in the CBA. Upon completion of the new hire's first thirty (30) months of employment, he then receives the full minimum wage rate.

32. Beginning the first day as a member of 32BJ, the 2005 Collective Bargaining Agreement provides for "Guards" to be paid an hourly minimum wage of $18.04, 80% of which is $14.43.

33. Hartwell was to receive a minimum hourly wage rate of $14.43 from October 22, 2007 through December 31, 2007. During the period October 22, 2007 through December 30, 2007, Hartwell should have received an additional $1,040.23 in unpaid wages.

34. As of January 1, 2008, a new Collective Bargaining Agreement was entered into between 32BJ and Guardian Services Industries ("the 2008 CBA") which provides that Guards are to be paid on the following scale:

   a. $18.79 during the period January 1, 2008 through December 31, 2008, 80% of which is $15.03.

   b. $19.54 during the period January 1, 2009 through December 31, 2009, 80% of which is $15.63.

35. During the period January 1, 2010 through January 21, 2010, Hartwell would still be considered a "new hire" and thus would receive 80% of $20.34 (the full hourly minimum wage rate) amounting to $16.27 an hour.

36. Pursuant to the CBA, once a Guard had completed thirty (30) months of employment, the period of receiving 80% of the full hourly minimum wage rate was completed and the Guard would now receive $20.34 an hour for the duration of his employment.

37. Throughout this entire time of his employment, Hartwell has received only $9.50 per hour.

38. During the period October 21, 2007 through December 31, 2007, Hartwell should have received an additional $1,040.23 in unpaid wages.

39. During the period January 1, 2008 through December 31, 2008, Hartwell should have received an additional $6,920.90 in unpaid wages.

40. During the period, January 1, 2009 through December 31, 2009, Hartwell should have received an additional $7865.55 in unpaid wages.

41. During the period, January 1, 2010 through January 21, 2010, Hartwell should have received an additional $464.37 in unpaid wages.

42. During the period January 22, 2010 through May 17, 2010, Hartwell should have received an additional $4,218.89 in unpaid wages.

**32BJ's Failure to Pursue Hartwell's Grievance to Arbitration**

43. On November 20, 2007, having not received the pay increase required by the 2005 CBA, Hartwell followed the CBA grievance procedure and filed a grievance with defendant 32BJ which stated that as of October 24, 2007, he had not received the contractual wage increase from his employer.

44. In connection with filing his grievance, Hartwell filled out a form that listed "Guardian Security" as his employer.

45. 32BJ inputted the information from the grievance form filled out by Hartwell into its computer system and listed "Guardian Services Industries" as Hartwell's employer.

46. On January 4, 2008, as is set forth in the CBA, 32BJ formally filed a demand for arbitration with the "Office of the Contract Arbitrator" (hereinafter "Demand for Arbitration") alleging that Hartwell's employer, "Guardian Services Industries," had not paid him his contractually agreed upon wages. The Demand for Arbitration is attached as *Exhibit A.*. Specifically, the Demand for Arbitration stated that:

> The Union seeks that the member's rate of pay be raised to the applicable contractual wage rate and that the member be compensated retroactively for the difference in pay plus interest (15% per annum), fees and all expenses in connection with arbitration where applicable and required by the collective bargaining agreement.

47. Upon information and belief, Hartwell's arbitration was scheduled to take place on or about February 14, 2008 and then rescheduled to occur on February 5, 2008.

48. 32BJ did not inform Hartwell that his arbitration had been scheduled until the early morning of February 5, 2008 when 32BJ left Hartwell a voicemail that his hearing would take place later that day.

49. 32BJ's lawyer then contacted Hartwell two hours before the scheduled hearing to inform him that the hearing was being rescheduled because of an issue in serving Hartwell's employer.

50. In the file 32BJ recently provided Hartwell, there is an email dated February 12, 2008 in which 32BJ indicates that it would seek an adjournment of Hartwell's arbitration to amend the arbitration demand to add additional parties.

51. Between February 2008 and January 2010, Hartwell regularly followed up with 32BJ to ascertain the status of his case and the date for the rescheduled arbitration hearing. Hartwell was repeatedly told that the case was proceeding and that the arbitration would be rescheduled.

52. 32BJ did not inform Hartwell of any changes to the status of his arbitration hearing until January 11, 2010, when Hartwell, after asking for an updated case status, was told that his case had been closed in October 2008.

53. The file 32BJ recently provided to Hartwell contained an October 24, 2008 letter from 32BJ to the Office of the Contract Arbitrator withdrawing Hartwell's Demand for Arbitration. That letter was not sent to Hartwell and is attached as *Exhibit B.*

54. Beginning on or about January 12, 2010, Hartwell and his attorneys made repeated oral and written requests to 32BJ to provide Hartwell with any information regarding the reason his case was closed.

55. Specifically, by letters dated February 26 and March 22, 2010, Hartwell's attorneys sought that 32BJ explain the reason that 32BJ withdrew Hartwell's arbitration. 32BJ did not respond to either letter.

56. It was not until April 15, 2010, when Hartwell's counsel provided 32BJ with a draft of the complaint it intended to file, did 32BJ's counsel contact Hartwell's counsel and thereafter, by letter dated May 7, 2010 (the "32BJ's May 7th Letter"), informed Hartwell that the building he worked at was allegedly not a party to a collective bargaining agreement with the Union. That letter is attached as *Exhibit C*.

57. Even then, 32BJ failed to inform Hartwell that the Building in which he worked was allegedly not covered by the CBA. 32BJ also did not inform Hartwell that he should cease paying his Union dues.

58. Upon information and belief, 32BJ did not conduct any investigation into whether Guardian Security was an alter-ego of Guardian Service Industries or whether they were a single employer.

59. Guardian Security continues to violate the explicit terms of the CBA by paying Hartwell $9.50 an hour.

60. Between October 22, 2007 and May 17, 2010, Hartwell has been underpaid in the amount of $20,509.94. Hartwell's damages continue to accrue.

61. Because 32BJ arbitrarily and capriciously closed Hartwell's grievance file, failed to investigate the alter ego relationship between defendants Guardian Security and Guardian Service Industries and did not pursue arbitration to resolve Hartwell's meritorious claim, 32BJ violated its duty to fairly represent Hartwell.

**AS AND FOR A FIRST CLAIM FOR RELIEF**
**(Breach of Duty of Fair Representation against 32BJ)**

62. By virtue of 32BJ's failure or refusal to pursue an arbitration of Plaintiff's meritorious grievance, defendant 32BJ has engaged in activity which is unlawful under the National Labor Relations Act so that Plaintiff is entitled to seek relief for damages therewith pursuant to §301(b).

63. By reason of the foregoing, Plaintiff is entitled to an order enforcing the CBA, requiring defendant 32BJ to cease his unlawful conduct, to pay plaintiff back pay in the amount of $20,509.94 and/or front pay, benefits, and to other damages, including the attorney's fees incurred in prosecuting this action, in an amount to be determined upon the trial of this action.

**AS AND FOR A SECOND CLAIM FOR RELIEF**
**(Breach of Contract against defendants Guardian Security and Guardian Service Industries)**

64. Plaintiff repeats and realleges each and every allegation contained above.

65. Plaintiff has worked as an employee of defendants Guardian Security and Guardian Service Industries as a Guard at the Building from July 24, 2007 to the present time.

66. Plaintiff has been a member of 32BJ in good standing from October 24, 2007 to the present time.

67. During the period October 24, 2007 to the present time, the 2005 and 2008 CBAs provided for Plaintiff to receive hourly wage increases as specified above.

68. Neither Guardian Security nor Guardian Service Industries ever provided Hartwell any of the hourly wage increases required by the CBA.

69. As such, defendants Guardian Security and Guardian Service Industries have breached their contract with Plaintiff and Plaintiff has been damaged in an amount of $20,509.94 in back pay and/or front pay plus interest.

**JURY DEMAND**

70. Plaintiff demands trial by jury.

WHEREFORE, by reason of the foregoing, Plaintiff prays for judgment against defendants as follows:

(1) Enjoining defendants from violating or continuing to violate the subject collective bargaining agreement between defendants;

(2) On the First Claim for Relief, for an order requiring 32BJ to discharge its duties of fair representation, requiring defendants to cease their unlawful conduct and to damages in an amount to be determined upon the trial of this action;

(3) On the Second Claim for relief, for an Order that Plaintiff is due and owing back pay in the amount of $20,509.94 and/or front pay plus interest from defendants Guardian Security and Guardian Service Industries;

(4) Award the Plaintiff reasonable attorney's fees and the costs for this action; and,

(5) For further relief as the Court deems just and proper.

Dated: May 21, 2010
New York, New York

Alexander Gardner
MINTZ & GOLD LLP
470 Park Ave. So. 10th Fl.
New York, NY 10016
(212) 696-4848; (212) 696-1231 *facsimile*
gardner@mintzandgold.com
*Attorneys for Plaintiff*

Case 1:10-cv-04189-DAB   Document 1   Filed 05/21/10   Page 12 of 18

32BJ SEIU
Stronger Together

SERVICE EMPLOYEES INTERNATIONAL UNION CTW, CLC

MICHAEL P. FISHMAN
President

KEVIN J. DOYLE
Executive Vice President

HÉCTOR J. FIGUEROA
Secretary-Treasurer

KYLE BRAGG
Vice President

LENORE FRIEDLAENDER
Vice President

BRIAN LAMBERT
Vice President

VALARIE LONG
Vice President

Online at
www.seiu32BJ.org

Local 32BJ Headquarters
101 Avenue of the Americas
New York, NY 10013-1991
212.388.3800

Connecticut District
800.228.5253
Hartford 860.560.8674
Stamford 203.602.6615

Westchester District
914.637.7000

Long Island District
516.579.4020

New Jersey District
866.5JANITOR
973.824.3225

Philadelphia District
215.226.3600

District 82
Washington 202.387.3211
Baltimore 410.225.7511
Silver Spring 301.562.9301

January 4, 2008

Office of the Contract Arbitrator
7 Penn Plaza, Suite 301
New York, New York 10001

**Re: 100-104 Fifth Avenue**
**Alberto Perez et. al.**
**Case No: 7835/7066**

Dear Administrator:

SEIU Local 32BJ and the Employer at the above-referenced work location are signatory to a collective bargaining agreement which provides that in the event of disputes, the matter shall be referred to the Office of the Contract Arbitrator. The Employer in this matter is: Guardian Services Industries
161 Avenue of the Americas, 4th Floor
New York, NY 10013

Local 32BJ submits the following dispute to arbitration which the Employer has failed and refused to adjust:

Claim #1: Member Willie A. Hartwell Jr.claims that he did not receive the contractural wage increase as of October 24, 2007 till present. The Union seeks that the member's rate of pay be raised to the applicable contractural wage rate and that the member be compensated retroactively for the difference in pay plus interest (15% per annum), fees and all expenses in connection with arbitration, where applicable and required by the collective bargaining agreement.

Claim #2 The Union on behalf of all affected members at the buidling claim that twelve hours overtime on Saturday normally done by Local 32BJ members is now being done by non union security. The Union seeks for the Saturday overtime to be returned to Local 32BJ members.

Please schedule this matter for a hearing accordingly and as soon as practicable.

Very truly yours,

Joanne Davis
Complaint Coordinator

cc: Guardian Services Industries
Edward Wright, Grievance Representative

Alberto Perez et. al.
1299 Grand Concourse, Apt.#33A
Bronx, NY 10452

Willie A.Hartwell Jr.
111-67 157th Street, Jamaica, NY 11433

Case 1:10-cv-04189-DAB   Document 1   Filed 05/21/10   Page 14 of 18



32BJ
SEIU
Stronger Together

SERVICE EMPLOYEES INTERNATIONAL UNION CTW, CLC

**MICHAEL P. FISHMAN**
President

**KEVIN J. DOYLE**
Executive Vice President

**HÉCTOR J. FIGUEROA**
Secretary-Treasurer

**KYLE BRAGG**
Vice President

**LENORE FRIEDLAENDER**
Vice President

**BRIAN LAMBERT**
Vice President

**VALARIE LONG**
Vice President

**Online at**
www.seiu32BJ.org

**Local 32BJ Headquarters**
101 Avenue of the Americas
New York, NY 10013-1991
212.388.3800

**Connecticut District**
800.228.5253
Hartford 860.560.8674
Stamford 203.602.6615

**Westchester District**
914.637.7000

**Long Island District**
516.579.4020

**New Jersey District**
866.5JANITOR
973.824.3225

**Philadelphia District**
215.226.3600

**District 82**
Washington 202.387.3211
Baltimore 410.225.7511
Silver Spring 301.562.9301

October 24, 2008

Office of the Contract Arbitrator
7 Penn Plaza, Suite 301
New York, N.Y. 10001

Re: **100-104 FIFTH AVENUE**
**CASE #'s 7835/7066**
**ALBERTO PEREZ, ET AL**

Dear Ms. Cervi,

The above-mentioned case has been withdrawn. Therefore, we request that the Union's demand for arbitration is withdrawn without prejudice.

Very truly yours,

Joanne Davis
Complaint Coordinator

Cc: Guardian Service Industries, Inc.
161 Avenue of the Americas, 4th Floor
New York, NY 10013

Realty Advisory Board
292 Madison Avenue, 16th Floor
New York, NY 10017

Note: This case was scheduled for an Arbitration hearing on
**February 5, 2008 @ 3:15 p.m.**

32BJ SEIU
Stronger Together

SERVICE EMPLOYEES
INTERNATIONAL UNION
CLC

**MICHAEL P. FISHMAN**
President

**KEVIN J. DOYLE**
Executive Vice President

**HÉCTOR J. FIGUEROA**
Secretary-Treasurer

**KYLE BRAGG**
Vice President

**LENORE FRIEDLAENDER**
Vice President

**BRIAN LAMBERT**
Vice President

**VALARIE LONG**
Vice President

Online at:
www.seiu32bj.org

**Local 32BJ Headquarters:**
101 Avenue of the Americas
New York, NY 10013-1991
212.388.3800

**Office of the General Counsel**

**SEIU Local 32BJ**
101 Avenue of the Americas
19th Floor
New York, NY 10013-1906
Fax: 212.388.2062

Writer's Direct Dial: 212.388.3025

May 7, 2010

<u>**Via Fax (212) 696-1231 and U.S. Mail**</u>
Alexander H. Gardner
Mintz & Gold
470 Park Ave. South, 10th floor
New York, NY 10016

Re: Willie A. Hartwell

Dear Mr. Gardner:

Here, as promised in my April 22, 2010 letter, is a response to your letter dated February 26, 2010.

Willie Hartwell visited Local 32BJ on November 20, 2007 to complain that he was not being paid the proper wage. Although the Union filed the case for arbitration, the Union's practice is to file for arbitration prior to completing its investigation in order to preserve time limits, and to obtain the earliest possible arbitration date. In Mr. Hartwell's case, subsequent to its demand for arbitration, Local 32BJ completed its investigation and determined that Mr. Hartwell was employed by Guardian Security Services, Inc., while the Union's collective bargaining agreement was with Guardian Service Industries, Inc. Since the Union did not have a collective bargaining agreement with Guardian Security, it decided to withdraw Mr. Hartwell's grievance.

Subsequently, in December 2009, Local 32BJ entered into a collective bargaining agreement with Guardian Security, but that agreement only covers 5 locations; it does not cover 100 Fifth Avenue.

It is also worth noting that Local 32BJ keeps a log when individuals either call or visit its Contract Grievance Center. Although you have asserted that Mr. Hartwell "regularly followed-up" with the Union to ascertain the status of his case, the Union has no record of any calls or visits by Mr. Hartwell in 2009. Even if Mr. Hartwell claims that he was not notified of the Union's October 2008 decision to withdraw the grievance, at some point prior to January 2010, he reasonably should have known that the Union was not taking any action on his complaint.

Finally, it has come to my attention that Mr. Hartwell has been paying dues to the Union since October 2007. As you know, membership in the Union does not trigger any duty of fair representation. Rather, the duty of fair representation stems from the Union's role as exclusive bargaining representative for a particular group

of workers, and Local 32BJ has never been Mr. Hartwell's exclusive bargaining representative. Local 32BJ does not typically receive dues payments from individuals who are not covered by a collective bargaining agreement. Since Mr. Hartwell has never been covered by a Local 32BJ collective bargaining agreement, in order to resolve this matter, if Mr. Hartwell would like to withdraw his membership in Local 32BJ, the Union would be willing to refund any dues and initiation fees that it has received from him. Our records indicate that Mr. Hartwell has paid a total of $1,122.00 in dues, as well as a $60.00 initiation fee.

If, in fact, Mr. Hartwell was not notified of the Union's October 2008 decision to withdraw his grievance at the time that decision was made, please convey the Union's apology to him. Needless to say, Local 32BJ agrees that $9.50 an hour is not a fair wage for a security officer. But, since Local 32BJ was not Mr. Hartwell's exclusive bargaining representative, it owed no duty to him, and thus, he has no claim against the Union.

Please do not hesitate to contact me if you have any additional questions.

Sincerely,

Andrew Strom
Associate General Counsel